

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

       -v.-                       :     INFORMATION

BONNIE J. HOXIE,
                                  :     10 CRIM 879
             Defendant.

- - - - - - - - - - - - - - - - - -x

## COUNT ONE
### (Conspiracy to Commit Securities Fraud and Wire Fraud)

The United States Attorney charges:

### Relevant Entities And Individuals

1.  At all times relevant to this Information, the Walt Disney Company ("Disney") was a Delaware corporation that was headquartered in Burbank, California. Disney, together with its subsidiaries and affiliates, was an international entertainment and media enterprise with four business segments: media networks, parks and resorts, studio entertainment and consumer products. Disney's securities are traded on the New York Stock Exchange ("NYSE") under the symbol "DIS."

2.  At all times relevant to this Information, BONNIE J. HOXIE, the defendant, was employed as a secretary to Disney's Head of Corporate Communications. HOXIE was employed at Disney from on or about December 18, 2007 until on or about May 26, 2010. HOXIE, in her capacity as a secretary to Disney's Head of Corporate Communications, had access to material, nonpublic

information about many aspects of Disney's business, including Disney's quarterly earnings statements.

3. At all times relevant to this Information, Yonni Sebbag ("Sebbag"), a co-conspirator not named as a defendant herein, was a close personal friend of BONNIE J. HOXIE, the defendant.

### Disney's Confidentiality Policy

4. Disney maintained an employee manual titled "Standards of Business Conduct". That manual states, among other things, that Disney employees have a duty not to engage in insider trading and not to release material, nonpublic information related to Disney to outside individuals for the purpose of insider trading. Specifically, the manual notes:

> The securities laws prohibit trading in stock or other securities on the basis of material information that has not been disclosed to the public. No one may trade in stock or other securities on the basis of undisclosed material information. Undisclosed material information might include sales and earnings figures, information about major contracts, stock splits, acquisitions or mergers, significant transactions, the sale of an associated company, the commencement of significant litigation, or new projects contemplated by the Company. . . . It is also illegal to provide material non-public information to persons outside the Company who could then use that information in deciding whether to buy or sell the Company's stock or securities. Cast Members and employees should not, without proper authority and confidentiality arrangements, give or release non-public information concerning the Company to anyone

not employed by the Company.

5. On or about December 18, 2007, BONNIE J. HOXIE, the defendant, signed a document in which she acknowledged her receipt of the Disney "Standards of Business Conduct" employee manual.

### THE FRAUDULENT SCHEME

6. From at least in or about March 2010 up through and including on or about May 26, 2010, BONNIE J. HOXIE, the defendant, Sebbag, and others known and unknown, executed a fraudulent scheme designed to misappropriate material, non-public information of Disney in violation of the fiduciary and other duties of trust and confidence owed to Disney. In furtherance of this scheme, HOXIE acquired material, non-public information in the course of her employment with Disney, including Disney's quarterly earnings (the "Inside Information"), and then, in violation of her duties of trust and confidence, disclosed the Inside Information to Sebbag, who in turn disclosed the Inside Information to outside investors for the purpose of trading in advance of the official public announcement of Disney's earnings.

7. To carry out the scheme, BONNIE J. HOXIE, the defendant, Sebbag, and others known and unknown, sent anonymous letters to multiple hedge funds and other investment companies, many of which were located in Manhattan, offering to sell the Inside Information for purposes of illegal insider trading. For

example, one of the letters stated:

> Hi,
> I have access to DISNEY'S (DIS) quarterly earnings report before its release on 05/03/10. I am willing to share this information for a fee that we can determine later. I am sorry but I can't disclose my identity for confidentiality reasons but we can correspond by email if you would like to discuss it. My email is eilatcap@gmail.com. I count on your discretion as you can count on mine. Thank you and I look forward to talking to you.

8.   Beginning on or about March 11, 2010, various agents of the Federal Bureau of Investigation, who were working in undercover capacities, posed as hedge fund traders (collectively, the "Tippees") and offered to buy the Inside Information from BONNIE J. HOXIE, the defendant, and Sebbag for purposes of trading in advance of the public announcement of the Inside Information.

9.   On or about May 8, 2010, three days in advance of the May 11, 2010 public announcement of Disney's earnings for the second quarter of 2010, BONNIE J. HOXIE, the defendant, and Sebbag caused to be sent to the Tippees, via e-mail, a confidential document titled "The Walt Disney Company Q2 Fiscal 2010 Key Topics Speaking Points." This document contained a collection of talking points that Disney executives could refer to while answering analysts' questions during the May 11, 2010 earnings call. In addition, on May 11, 2010, approximately two hours in advance of the public announcement, HOXIE and Sebbag

4

notified the Tippees that Disney's earnings per share would be 48 cents - which was better than what stock analysts had predicted.

10. On or about May 14, 2010, Sebbag met with two undercover FBI agents in New York and accepted a cash payment of $15,000 in exchange for the disclosure of the Inside Information. Sebbag further agreed that he would provide similar confidential information in the future in return for a thirty percent share of any profits from the insider-trading scheme.

## STATUTORY ALLEGATIONS

### The Conspiracy

11. From at least in or about March 2010 up through and including on or about May 26, 2010, in the Southern District of New York and elsewhere, BONNIE J. HOXIE, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and wire fraud, in violation of Title 18, United States Code, Section 1343.

### Objects of the Conspiracy

12. It was a part and an object of the conspiracy that BONNIE J. HOXIE, the defendant, and others known and unknown, unlawfully, willfully and knowingly, directly and

indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

13.    It was a further part and an object of the conspiracy that BONNIE J. HOXIE, the defendant, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, unlawfully, willfully and knowingly, directly and indirectly, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures and

sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Means and Methods of the Conspiracy

14. Among the means and methods by which BONNIE J. HOXIE, the defendant, and her co-conspirators would and did carry out the conspiracy were the following:

    a. HOXIE misappropriated the Inside Information in violation of (a) the fiduciary and other duties of trust and confidence that HOXIE owed to Disney and Disney clients; (b) the expectations of confidentiality of the Disney clients; and (c) Disney's written policies regarding the use and safekeeping of confidential and material, nonpublic information.

    b. HOXIE, in breach of her duty of confidentiality to Disney and its clients, disclosed the Inside Information that she had misappropriated from Disney to Sebbag, who in turn disclosed the Inside Information to those Sebbag believed to be outside investors, for the purpose of trading in advance of the official public announcement of Disney's earnings.

    c. Sebbag, while in possession of the Inside Information that Sebbag knew had been misappropriated by HOXIE in breach of HOXIE's duty to keep such information confidential, accepted a cash payment of $15,000 in exchange for the disclosure of the Inside Information. Sebbag further agreed that he would provide similar confidential information in the future in return

for a thirty percent share of any profits from the insider-trading scheme.

## Overt Acts

15. In furtherance of the conspiracy and to effect the illegal objects thereof, BONNIE J. HOXIE, the defendant, committed the following overt act, among others, in the Southern District of New York and elsewhere:

    a. On or about May 11, 2010, HOXIE provided material, nonpublic information about Disney's quarterly earnings report to Sebbag.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Wire Fraud)

The United States Attorney further charges:

16. The allegations contained in paragraphs 1 through 10 of this Information are repeated and realleged as if fully set forth herein.

17. From at least in or about March 2010 up through and including on or about May 26, 2010, in the Southern District of New York and elsewhere, BONNIE J. HOXIE, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, unlawfully, willfully and knowingly transmitted and caused to be transmitted

by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, to wit, on or about May 14, 2010, HOXIE caused an e-mail to be sent from California to New York, New York, discussing her payment for the material nonpublic information related to the Walt Disney Company.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

18. As a result of committing the above securities fraud and wire fraud offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 371 and 1343; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, as alleged in Counts One and Two of this Information, BONNIE J. HOXIE, the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud and wire fraud offenses.

### Substitute Assets Provision

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (i)    cannot be located upon the exercise of due

<table>
<tr><td>(ii)</td><td>diligence;<br>has been transferred or sold to, or deposited with, a third party;</td></tr>
<tr><td>(iii)</td><td>has been placed beyond the jurisdiction of the court;</td></tr>
<tr><td>(iv)</td><td>has been substantially diminished in value; or</td></tr>
<tr><td>(v)</td><td>has been commingled with other property which cannot be divided without difficulty;</td></tr>
</table>

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

(Title 15, United States Code, Sections 78j(b), 78ff;
Title 18, United States Code, Sections 371, 1343, and 981; Title
21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461;
and Title 17, Code of Federal Regulations,
Sections 240.10b-5 and 240.10b5-2.)

*Preet Bharara*
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- v. -

Bonnie J. Hoxie

Defendant.

---

**INFORMATION**

10 Cr. \_\_\_\_  (\_\_\_)

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Sections 371, 1343 and 2)

PREET BHARARA
United States Attorney.

**A TRUE BILL**

Foreperson.

9/21/10 *[handwritten notes]* Fld. Info + Waiver of IND AUSA Julian Moyne pres. Deft. Bonnie Hoxie pres. w/Atty Robert Baum. Consent to proceed bef. Mag. J. Deft. pleads guilty to Ct. #1 + 2. Bail Cont. Mag. Judge Dolinger